# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM R. RODRIGUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 11-1640 |
| | ) Judge Mark R. Hornak |
| EARL E. BLAKER, Nurse Individual | ) Magistrate Judge Maureen P. Kelly |
| Capacities; JEFFERY BEARD, | ) |
| Director/commissioner of the State of | ) |
| Pennsylvania; L. FOLINO, Superintendent | ) |
| of S.C.I. Greene, Each defendant is sued | ) |
| individually and in his official capacity, | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is recommended that pursuant to the provisions of the Prison Litigation Reform Act, the Complaint be dismissed before service for failure to state a claim upon which relief can be granted. The Complaint should be dismissed with prejudice as to all official capacity claims, and as against Defendants Jeffrey Beard and Louis Folino in their individual capacities but should be dismissed without prejudice as to Defendant Earl Blaker in his individual capacity.

### II. REPORT

William R. Rodriguez ("Plaintiff") is a convicted prisoner at the State Correctional Institution at Greene ("SCI-Greene"). The gravamen of his Complaint is that on September 8, 2011, at approximately 8:30 p.m., Plaintiff experienced a sharp pain on the left side of his chest and he fell forward hitting his head on the wall. Plaintiff called for help, and two corrections

1

officers came to his aid and escorted Plaintiff to the medical unit. Plaintiff was seen by Defendant Earl E. Blaker, who is a Nurse[1] and who asked Plaintiff what was wrong. Plaintiff informed Blaker that Plaintiff experienced a sharp pain in his chest and that he fell forward and hit his head. Plaintiff concedes that Blaker "took my vital signs and said I was ok." ECF No. 6 at 2, ¶ 7. Plaintiff then asked Blaker if he was going to check Plaintiff's bump on his forehead. Blaker then allegedly asked Plaintiff if he was going to sign the sick call slip (which apparently would have obligated Plaintiff to pay a fee for the visit). Plaintiff replied that he had a headache and if Blaker examined Plaintiff's bump, Plaintiff would sign the sick call slip. Blaker then told the two corrections officers accompanying Plaintiff that Blaker was done seeing Plaintiff. Blaker allegedly, did not examine Plaintiff's lump on his forehead. Ever since this episode, Plaintiff asserts that he has been experiencing headaches. Plaintiff contends that he cannot exercise, read or write without getting a serious headache, and that the Motrin which apparently was prescribed for him does not help for the pain.

Plaintiff alleges that the foregoing incident states a cause of action under the Eighth Amendment for deliberate indifference to his serious medical needs.

### A. Procedural History

While incarcerated at SCI-Greene, Plaintiff sought leave to prosecute this action in forma pauperis ("IFP"). ECF No. 2. The Court granted his motion to proceed IFP. ECF No. 5, and Plaintiff's Section 1983 civil rights Complaint was filed. ECF No. 6. The Complaint has not been served yet.

---

[1] http://www.licensepa.state.pa.us (site last visited 1/18/2012).

## B. Applicable Legal Principles

Because Plaintiff is a prisoner proceeding IFP, who seeks redress from a governmental entity or an employee of a governmental entity, and who has filed a civil action, concerning the conditions of confinement, the screening provisions of 28 U.S.C. §§ 1915(e) and 1915A and 28 U.S.C. § 1997e(c) apply. Under these screening provisions, a court is required to *sua sponte* dismiss a complaint, filed by a prisoner, if the complaint fails to state a claim upon which relief can be granted or if the complaint is frivolous. See, e.g., Nieves v. Dragovich, No. CIV.A.96-6525, 1997 WL 698490, at *8 (E.D. Pa. Nov. 3, 1997), aff'd, 175 F.3d 1011 (3d Cir. 1999) (Table). When reviewing a complaint under these screening provisions to determine if the complaint fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Fed.R.Civ.P. 12(b)(6). See, e.g., Tucker v. Angelone, 954 F.Supp. 134, 135 (E.D. Va.), aff'd, 116 F.3d 473 (Table) (4th Cir. 1997). In reviewing complaints as mandated by these screening provisions and, consequently, utilizing the standards for a 12(b)(6) motion to dismiss, the complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). However, a court need not accept as true any legal averments or conclusions contained in the complaint. Papasan v. Allain, 478 U.S. 265, 286 (1986). Dismissal is proper under Rule 12(b)(6) where a court determines that the facts alleged, taken as true, fail to state a claim as a matter of law, see, e.g., Gould Electronics, Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000), or, do not state a claim that is "plausible." See, e.g., Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Furthermore, because Plaintiff is *pro se*, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519 (1972).

In order to establish a Section 1983 cause of action, a plaintiff must allege facts demonstrating: 1) that there was a "person" acting under color of state law; 2) whose actions under color of state law caused him to be deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988). In addition, a plaintiff must allege facts showing the named defendants were personally involved in the alleged violations of his federal rights because liability under the civil rights statute cannot be predicated solely on the theory of *respondeat superior*, i.e., a person will be not held liable solely because he is the supervisor of another that engaged in unconstitutional activity. See, e.g., Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). "Personal involvement can be shown through allegations of personal direction or of actual [contemporaneous] knowledge and acquiescence." Id. Accord Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("Her amended complaint likewise does not contain even a remote suggestion that Attorney General Fisher had **contemporaneous**, personal knowledge of her transfer and acquiesced in it.") (emphasis added). But see Bayer v. Monroe County Children & Youth Services, 577 F.3d 186, 191 n. 5 (3d Cir. 2009) (calling into doubt the continuing viability of mere knowledge and acquiescence as being sufficient to impose liability, in light of the Supreme Court's decision in Iqbal).

**C. Discussion**

### 1. Official Capacity Claims

Plaintiff purports to sue the Defendants in their official capacities under Section 1983. ECF No. 6 at 1, ¶ 1; id. at 2, ¶ 6. However, Plaintiff's claims against the Defendants in their official capacities fail to state a claim upon which relief can be granted and so the official capacity claims must be dismissed. Poole v. D.O.C., 153 F.App'x 816, 818-19 (3d Cir. 2005) ("states, state agencies, and state officials acting in their official capacities are not 'persons' subject to suit under 42 U.S.C. § 1983") (citing Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)).

### 2. Eighth Amendment

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[2] The United States Supreme Court has explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: 1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment, and 2) a subjective inquiry into the mind of the person inflicting the harm. See Wilson v. Seiter, 501 U.S. 294 (1991). Accord Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000)("A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components−one subjective, focusing on the defendant's motive for his conduct, and the other

---

[2] Technically, the Eighth Amendment applies to the states through the Fourteenth Amendment. See Estelle v. Gamble, 429 U.S. 97, 101-02 (1976) (citing Robinson v. California, 370 U.S. 660 (1962)). The standards of the Eighth Amendment barring the federal government from inflicting cruel and unusual punishments are the standards applicable to the States through incorporation by the Fourteenth Amendment's due process clause. See Sistrunk v. Lyons, 646 F.2d 64, 66-67 (3d Cir. 1981) (citing Robinson v. California). The standards under the Eighth Amendment and the standards under the Fourteenth Amendment are fundamentally identical. Furman v. Georgia, 408 U.S. 238, 422 n.4 (1972) (Blackmun, J., dissenting) ("the tests for applying these two provisions are fundamentally identical."). Given this, the court will not distinguish between cases involving the Eighth Amendment or the Fourteenth Amendment and will explicitly apply Eighth Amendment standards.

objective, focusing on the conduct's effect."). As the test is conjunctive the plaintiff must allege facts demonstrating both prongs. See Pasha v. Barry, NO. CIV. A. 96-466, 1996 WL 365408, at *1 (D.D.C. June 21, 1996 ) ("With respect to prevailing on an Eighth Amendment claim against defendant Adrienne Poteat, the warden at the CTF, the plaintiff bears the burden of demonstrating that his claims satisfy both the objective and subjective requirements. . ."). The Court of Appeals for the Third Circuit has explained the objective element as requiring proof that "the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. . . . If not our inquiry is at an end." Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000), cert. denied, 531 U.S. 821 (2000). If the harm suffered is sufficiently serious the court may then turn to analyze the subjective element which the Third Circuit has described as determining whether the prison "officials acted with a sufficiently culpable state of mind. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain." Id. (citations omitted).

Furthermore, in cases involving the alleged denial of medical care, as here, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal quotations omitted). The Court has held that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). As a corollary of the deliberate indifference standard, mere negligence by staff at the prison, medical personnel and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation. Estelle, 429 U.S. at 105-06. The Supreme Court has held that

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Id.

It appears that the focus of Plaintiff's Complaint is that Defendant Blaker failed to examine Plaintiff's bump on his head, notwithstanding that Blaker apparently did provide an examination to Plaintiff and ascertain Plaintiff's vital signs.

### 3. Defendants Beard and Folino in Their Individual Capacities

Other than naming Defendants Beard and Folino as Defendants and describing their jobs, ECF No. 6 at 2, ¶¶ 4 to 5, the Complaint makes no factual allegations against them. For this reason alone, the Complaint fails to state a claim against them.

Alternatively, there is no allegation, nor could there that these two defendants had any personal participation in the alleged violation of Plaintiff's Eighth Amendment rights. The Complaint does not allege any contemporaneous knowledge on their part that Defendant Blaker allegedly failed to examine the bump on his Plaintiff's head. Thus, the Complaint fails to allege personal involvement on the part of Defendants Beard and Folino as is required in order to state a cause of action under Section 1983.

Moreover, we take judicial notice of the fact that Defendant Jeffrey Beard retired from his

position of Secretary of the Department of Corrections no later than August 20, 2010,[3] more than a year prior to the date Plaintiff complains he was denied medical treatment. Even if Plaintiff sought leave to amend so as to substitute the individual who was the DOC Secretary in September 2011, such would be futile, as again, there is simply no personal involvement on that person's part in the alleged denial of Plaintiff's medical care. The fact that Plantiff did not know who the DOC Secretary was at the time of the incident only confirms that the DOC Secretary had no personal involvement in the alleged wrongdoing.

Alternatively, Defendants Beard and Folino, as prison administrators were entitled to rely upon the expertise of trained health care providers who had seen and treated Plaintiff, namely Defendant Blaker, the nurse who had seen Plaintiff on September 8, 2011 and determined that Plaintiff's vital signs were fine, and apparently, no further treatment was immediately needed.

The general rule is that where a prisoner has been seen and treated by medical personnel, a non-physician prison administrator cannot be deemed deliberately indifferent simply because the lay administrator did not challenge the medical personnel's care or respond directly to a prisoner's requests for more or different treatment. See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D. Pa. 2001). This rule makes sense because a layman cannot be deliberately indifferent to a prisoner's medical needs when he knows that the prisoner has been seen by and treated by licensed medical professionals, notwithstanding the prisoner's complaints about the treatments because a layman has no expertise whereby to judge the adequacy *vel non* of medical treatment. Nor does Plaintiff allege anything to take his

---

[3] http://www.pacast.com/?page=36 (noting the Governor's announcement of the Beard's replacement) (site last visited 1/18/2012).

case outside of this Durmer rule.

Given that the Complaint fails to state a claim upon which relief can be granted against Defendants Beard and Folino, the Complaint should be dismissed against them with prejudice, as we conclude that amendment as to these two Defendants would be futile.

### 4. Defendant Blaker

The sole allegation against Defendant Blaker is that after determining Plaintiff's vital signs were stable, Defendant Blaker failed to further examine the bump on Plaintiff's forehead.

Prison medical officials have considerable latitude in the diagnosis and treatment of the medical conditions of inmate patients. Parham v. Johnson, 126 F.3d 454, 458 (3d Cir. 1997). Therefore, a mere difference of opinion concerning the treatment received by an inmate is not actionable under the Eighth Amendment. Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). The rule announced by the United States Court of Appeals for the Third Circuit is that "[w]here [a] plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." Norris v. Frame, 585 F.2d 1183, 1186 (3d Cir. 1978). Here, according to the Complaint, Plaintiff apparently received "some care" from Defendant Blaker, (examination of Plaintiff's vital signs and a determination that Plaintiff was fine), hence, it does not appear that Plaintiff can make out an Eighth Amendment claim against Defendant Blaker. Accordingly, the Complaint against Defendant Blaker must be dismissed for failure to state a claim upon which relief can be granted. However, the Complaint should be dismissed against Defendant Blaker without prejudice because we cannot conclude at this early stage that amendment would be futile.

### III. CONCLUSION

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by February 13, 2012. Failure to timely file objections will constitute a waiver of any appellate rights. <u>Brightwell v. Lehman</u>, 637 F.3d187, 193 n.7 (3d Cir. 2011).

                                                s/Maureen P. Kelly  
                                                MAUREEN P. KELLY  
                                                U.S. MAGISTRATE JUDGE

Dated: January 25, 2012

cc:     The Honorable Mark Hornak  
        United States District Judge

        WILLIAM R. RODRIGUEZ  
        JH-2538  
        SCI Greene  
        175 Progress Drive  
        Waynesburg, PA 15370